**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **LARRY REEVES,** | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 7:08-CV-131 (HL) |
| | : |
| **THOMAS COUNTY, GEORGIA,** | : |
| | : |
| Defendant. | : |
| _____ | : |

## ORDER

Before the Court is Defendant Thomas County, Georgia's ("Thomas County") Motion for Summary Judgment (Doc. 22). For the following reasons, Thomas County's Motion is granted in part and denied in part.

## I.   FACTS AND PROCEDURAL HISTORY[1]

Plaintiff Larry Reeves ("Reeves") began working for Thomas County as a paramedic on September 20, 2005. (DSOMF[2] ¶ 1; Reeves Dep. at 21). As a paramedic, Reeves responded to emergency calls as part of Thomas County's Emergency Medical Services ("EMS"). (DSOMF ¶ 2; Reeves Dep. at 55). Each Thomas County ambulance was staffed by at least two EMS employees at all times - one paramedic, and either another paramedic or an Emergency Medical

---

[1] The Court views the facts in the light most favorable to Reeves as the nonmoving party.

[2] "DSOMF" refers to Defendant's Statement of Material Facts and Conclusions of Law in Support of Summary Judgment (Doc. 22-7). The cited paragraphs are admitted by Reeves in Plaintiff's Statement of Disputed Material Facts in Opposition to Summary Judgment (Doc. 25).

Technician ("EMT"). (DSOMF ¶¶ 3-4; Reeves Dep. at 56). The two Thomas County employees assigned to the ambulance generally divided the driving responsibility equally, with the non-driver attending to the patient. (DSOMF ¶¶ 5-6; Reeves Dep. 56-57). But when a patient was severely injured, the paramedic would always attend to the patient, while the EMT would drive the ambulance. (Reeves Dep. at 57).

Reeves's original job description, according to the Thomas County policy (Doc. 24-7), did not contain the requirement that Reeves be capable of operating an emergency vehicle. (Reeves Affidavit ¶11). However, Reeves contends that, at some point after May 8, 2007, Thomas County revised the job description to include such a requirement. Id. Despite the purported change in the job description, the Thomas County personnel director and another Thomas County paramedic testified that operating a motor vehicle was not part of the paramedic job description. (Revells Dep. at 5; Jones Dep. at 9-10). In fact, another Thomas County paramedic was permitted to continue working as a paramedic despite having a suspended license and being unable to drive for approximately one year. (Ogletree Dep. at 4-6).

On December 21, 2006, Reeves suffered a seizure while making breakfast at his home. (DSOMF ¶ 7; Reeves Dep. at 25). Reeves never experienced any other seizures, either before or after this isolated occurrence. (DSOMF ¶ 8; Reeves Dep. at 26).

On December 22, 2006, Reeves's physician advised him not to return to work until after the physician had investigated the cause of the seizure. (DSOMF ¶ 9; Reeves Dep. at 52-53). On May 8, 2007, his physician issued a limited work release, giving Reeves clearance to return to work but restricting him from operating a motor vehicle (DSOMF ¶ 17).

After Reeves received his limited work release, Thomas County Manager Michael Stephenson ("Stephenson") refused to allow Reeves to return to work as a paramedic until the driving restriction was lifted. (DSOMF ¶ 20; Reeves Dep. at 82-83). Stephenson testified that he refused to allow Reeves to return because he feared Reeves might have another seizure. (Stephenson Dep. at 17).

On August 21, 2007, after repeated requests for permission to return to work, Thomas County allowed Reeves to return as a non-driving paramedic. (DSOMF ¶ 21; Reeves Dep. at 90). On October 10, 2008, Reeves filed this lawsuit alleging discrimination and retaliation under the Americans with Disabilities Act ("ADA") because Thomas County refused to allow him to return to work while the driving restriction was in place. (Doc. 1). On February 18, 2010, Thomas County moved for summary judgment on all of Reeves's claims. (Doc. 22).

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is deemed genuine when the evidence is such that a reasonably jury could rule in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In ruling on a defendant's motion for summary judgment, the court views the facts in the light most favorable to the plaintiff. Stanley v. City of Dalton, 219 F.3d 1280, 1287 (11th Cir. 2000). The court may not, however, make credibility determinations or weigh the evidence. Liberty Lobby, 477 U.S. at 255, 106 S. Ct. at 2513.

The initial burden lies with the movant to demonstrate that the nonmovant lacks evidence to support an essential element of its claim. Lowe v. Aldridge, 958 F.2d 1565, 1569 (11th Cir. 1992). The burden then shifts to the nonmovant, who must come forward with some evidence that would allow a jury to find in his favor, even if the parties dispute that evidence. Id. If the evidence that the nonmovant presents, however, is "not significantly probative" or "merely colorable," then summary judgment may be granted. Liberty Lobby, 477 U.S. at 249, 106 S. Ct. at 2511.

## B. Discrimination Claim

The ADA prohibits an employer from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §

12112(a). A plaintiff pursuing an ADA claim based on circumstantial evidence must prove discrimination under the traditional Title VII burden-shifting framework for employment discrimination. Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000). Here, Reeves's ADA claim is based on circumstantial evidence. The burden-shifting analysis first requires the plaintiff to establish a prima facie case of discrimination. Id. To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability. Id. Thomas County argues that Reeves has not established the first two prongs of his prima facie case – that he was disabled and that he was a qualified individual.

### a. Whether Reeves is Disabled

With respect to an individual, the ADA defines a disability as a "(A) physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Thomas County argues summary judgment should be granted in its favor because Reeves was not actually disabled, since Reeves's condition only impaired his ability to drive, and driving is not a major life activity subject to accommodation under the ADA. (Doc. 22-2 at 2). However, Reeves concedes that he was not actually disabled, but rather, bases his ADA claim on the theory that he was regarded as disabled by Thomas County. (Doc. 26). Therefore, the Court focuses its analysis on whether Thomas County regarded Reeves as disabled.

A plaintiff may be "regarded as" disabled in two ways: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S. Ct. 2139, 2149-50, 144 L. Ed. 2d 450 (1999).[3] "Major life activities" include functions such as working. 29 C.F.R. § 1630.2(I). However, the Eleventh Circuit has specifically held that driving is not a major life activity for purposes of the ADA. Chenoweth v. Hillsborough County, 250 F.3d 1328, 1329-30 (11th Cir. 2001).

Reeves claims Thomas County regarded him as disabled under both categories of the "regarded as" disability analysis. (Doc. 26). In contrast, Thomas County argues that it only regarded Reeves as impaired to the extent his condition rendered him unable to drive, which is not a major life activity. (Doc. 22-2 at 3). Accordingly, the parties disagree over whether Thomas County regarded

---

[3] Sutton v. United Air Lines, Inc., was superceded by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). Effective January 1, 2009, the "regarded as" definition of disabled is satisfied if the plaintiff "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). However, courts have consistently held the amendments are not retroactive. Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 566 (6th Cir. 2009); Fikes v. Wal-Mart, Inc., 322 Fed. Appx. 882, 883 n.1 (11th Cir. Apr. 10, 2009)(unpublished). The events that gave rise to Reeves's ADA claim took place before the amendments went into effect. Therefore, the Court applies the prior version of the statute as well as the case law interpreting the prior version.

Reeves as unable to drive or unable to work in general, the latter constituting a major life activity while the former does not.

Thomas County Manager Michael Stephenson testified that he refused to allow Reeves to return to work for fear that "he might have a seizure with a patient in the back."[4] (Stephenson Dep. at 17). It is unclear from this statement whether Stephenson was fearful that Reeves would suffer a seizure while driving, or also while attending to a patient. In other words, the statement does not clearly indicate whether Stephenson felt the impairment would solely affect Reeves's ability to drive, or affect Reeves's ability to perform his job in general. In addition, Stephenson told Reeves he would not be able to return to work as a paramedic until he could drive. (Reeves Dep. at 82-83). Again, it is unclear whether Stephenson made this statement because he regarded Reeves as impaired only to the extent of his inability to drive, or rather, because the driving restriction being lifted would signify the decreased possibility that Reeves would suffer a

---

[4] The Court disagrees with Thomas County's assertion that Stephenson's testimony should not be considered. Thomas County argues that the question eliciting Stephenson's response was improper because it assumes the County did not accommodate Reeves. However, it is undisputed that Thomas County did not accommodate Reeves for a period of time after he received his limited work release. Therefore, the purpose of the question was not to elicit an admission that Thomas County failed to accommodate, but rather to discover why Thomas County refused to allow Reeves to return to work. Thomas County further argues the question was improper because it required Stephenson to discern the legal significance of the term "accommodate" in the context of the ADA. But, regardless of whether Stephenson knew the legal significance of the term "accommodate" as it pertains to the ADA, the question is clearly asking why he refused to allow Reeves to return to work, to which Stephenson has sufficient knowledge and information to provide a response.

seizure while performing any of his general work duties. Stephenson's testimony, when viewed in the light most favorable to Reeves, and along with the fact that Thomas County allowed another paramedic employee to continue employment as a non-driving paramedic,[5] could lead a reasonable jury to conclude that Thomas County regarded Reeves as unable to work in general. Therefore, the Court finds Thomas County has not met its burden of establishing that no genuine issue of material fact exists as to whether Reeves was regarded as merely unable to drive, or unable to work in general and, thus, regarded as suffering an impairment which substantially limits a major life activity.

Furthermore, to show that Thomas County perceived him as being unable to work, Reeves must demonstrate not only that Thomas County thought he was unable to work, but that he was unable to perform "either a class of jobs or a broad range of jobs as compared to the average person having comparable training, skills and abilities." Carruthers v. BSA Adver. Inc., 357 F.3d 1213, 1216 (11th Cir. 2004)(adopting 29 C.F.R. § 1630.2(j)(3)(l)). It is not enough for an employee to show that his employer thought that he could not perform a single, particular job nor is it sufficient if the employee merely shows that the employer was aware of his impairment. Id. at 1216, 1217. However, the prong is generally satisfied if the employer's conduct creates an inference that the employer thought that the employee was unable to work generally. See e.g., Wilson v. Phoenix

_____

[5] Thomas County paramedic Derrick Ogletree was permitted to continue working as a paramedic despite having a suspended license and being unable to drive. (Ogletree Dep. at 4-6).

Specialty Mfg. Co. Inc., 513 F.3d 378, 385 (4th Cir. 2008)(finding "regarded as" prong satisfied when employer ignored the opinion of employee's physician stating that employee was capable of returning to work); Gordon v. Hamm & Assocs., 100 F.3d 907, 912-13 (11th Cir. 1996)("a significant impairment is one that is viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks"). Moreover, an employer's failure to offer an employee another position or propose any accommodation raises a genuine issue of material fact as to whether the employer regarded the employee as unable to perform a class or broad range of jobs. D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1229 n.5 (11th Cir. 2005)(finding that employer regarded employee as disabled where other jobs were available at employer's facility, but employer believed employee could not perform any of the available jobs).

Here, Thomas County's refusal to allow Reeves to return to work for fear that he would have a seizure suggests that Thomas County regarded Reeves as substantially limited in more working capacities than merely driving, particularly since Reeves could perform all of his required duties without driving and Thomas County allowed another paramedic to continue employment although incapable of driving. Therefore, Thomas County's conduct in refusing to allow Reeves to return creates an inference that it regarded Reeves as unable to work generally. Additionally, Thomas County failed to offer any other positions or accommodations prior to August 21, 2007, which, at the very least, creates a

genuine issue of fact as to whether Thomas County regarded Reeves as unable to perform a class or broad range of jobs.

Although the Court agrees with Thomas County's assertion that its eventual accommodation does not establish that it regarded Reeves as having an impairment substantially limiting a major life activity, the other facts in the record create a genuine issue of material fact for which a reasonably jury could find that Thomas County regarded Reeves as disabled. Thus, Thomas County's Motion for Summary Judgment must be denied as to the first prong of Reeves's ADA claim.

### b. Whether Reeves is a Qualified Individual

Under the second prong of the ADA's discrimination analysis, a disabled person must also be a qualified individual to be eligible for relief. A qualified individual is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). In its Motion for Summary Judgment, Thomas County asserts that Reeves was not a qualified individual prior to his limited work release on May 8, 2007, or after his unrelated worker's compensation injury on May 9, 2008.[6] (See Doc. 22-2 at 2-3). By this assertion, Thomas County implies that Reeves was a qualified individual between these

---

[6] Prior to the limited work release, Reeves's physician prohibited him from returning to work altogether, and after his worker's compensation injury, Reeves was under a physician-imposed restriction wherein he could not lift more than 10 pounds. In both of these situations, he was not a qualified individual because he was unable to perform the essential job functions of a paramedic.

two events, which period encompasses the time period at issue. The time period at issue in this case is May 8, 2007 through August 21, 2007 – the period during which Thomas County refused to allow Reeves to return to work.

Even if Thomas County had asserted that Reeves was not a qualified individual for the time period of May 8, 2007 through August 21, 2007, summary judgment would still be inappropriate because the parties dispute whether the operation of a motor vehicle was an essential function of the position of paramedic. Specifically, the Thomas County personnel director and another Thomas County paramedic testified that operating a motor vehicle was not part of the job description of a paramedic. Other evidence supports the fact that Thomas County revised the paramedic job description sometime after May 8, 2007 to require the ability to operate an emergency vehicle. Thus, a reasonable jury could find that the operation of a motor vehicle device was not an essential job function and Reeves was a qualified individual.

Therefore, there remains a genuine issue of material fact as to the second prong of the ADA's discrimination analysis, and Thomas County's Motion for Summary Judgment on this issue must be denied.

### c. Legitimate Nondiscriminatory Reason

Once a plaintiff establishes a prima facie case of disability discrimination, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for its employment action. <u>Tex. Dept. of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254-55 (1981). Thomas County has not moved for

summary judgment on the issue of whether it had a legitimate nondiscriminatory reason for refusing to allow Reeves to work. Therefore, the Court assumes for the purposes of summary judgment that there is a genuine issue of fact as to whether Thomas County had a legitimate nondiscriminatory reason behind its refusal to allow Reeves to return to work.

### d. Pretext

In his Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. 26), Reeves provides a lengthy discussion of whether the purported legitimate reason for the adverse employment decision was merely pretextual. However, Thomas County has not moved for summary judgment on the issue of pretext. Therefore, the Court assumes for the purposes of summary judgment that there is a genuine issue of fact as to whether Thomas County's reason for refusing to allow Reeves to return to work was pretextual.

### C. Retaliation Claim

According to Reeves, he is no longer proceeding forward with his retaliation claim. (Doc. 26). When a plaintiff abandons a claim, granting summary judgment in favor of the defendant with regards to that claim is warranted. Chipka v. Bank of America, 355 Fed. Appx. 380, 383 (11th Cir. Dec. 8, 2009) (unpublished). Therefore, because Reeves expressly abandoned his retaliation claim, there is no genuine issue as to any material fact, and Thomas County's Motion for Summary Judgment is granted with respect to Reeves's retaliation claim.

**III.   CONCLUSION**

Based on the foregoing analysis, Thomas County's Motion for Summary Judgment (Doc. 22) is granted with respect to Reeves's retaliation claim. Defendant's Motion for Summary Judgment is denied as to all other claims.


**SO ORDERED**, this the 17th day of June, 2010.


_**s/ Hugh Lawson**_
**HUGH LAWSON, SENIOR JUDGE**

hss